*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *JOHN E S DUNHAM,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )   *No. 1:16-cv-00033-DBH* |
| | ) |
| *CAROLYN W. COLVIN,* | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
| *Defendant* | ) |

### *REPORT AND RECOMMENDED DECISION*[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of returning to past relevant work as a cashier.  The plaintiff seeks remand on the basis that the administrative law judge erred in relying on a post-hearing report of an examining consultant, Jonathan M. Freedman, Ph.D., without affording him an opportunity to review and comment on that evidence or cross-examine Dr. Freedman.  *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 4-5.  I conclude that the plaintiff fails to demonstrate that there was error or, alternatively, that any error was prejudicial.  Accordingly, I recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me on September 14, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of seizure disorder, marijuana dependence, and a history of alcohol dependence, Finding 2, Record at 19; that he had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but could not work around moving machinery or hazards, Finding 4, *id*. at 20; that he was capable of performing past relevant work as a cashier, which did not require the performance of any work-related activities precluded by his RFC, Finding 5, *id*. at 24; and that he, therefore, had not been disabled from January 20, 2012, the date of his SSI application, through July 9, 2014, the date of the decision, Finding 6, *id*. at 24. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R.

§ 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I.  Discussion

### A.  Relevant Background

As of February 20, 2014, the date of the plaintiff's hearing, he alleged that he was disabled due to epilepsy and light sensitivity stemming from injuries suffered at the age of 16 when he and a group of friends were struck by a drunk driver as they were walking alongside the road near his home.  *See* Record at 42, 243-44.  He did not claim to have a mental impairment.  *See id*. at 243-44.  However, after he testified that his best friend died in the accident, others blamed him for it, it "mentally destroyed" him, and he suffered from accident-related traumatic memories and night terrors, the administrative law judge offered to hold the record open to obtain a report of a psychological examination.  *See id*. at 44-45, 47, 76.  The plaintiff and his counsel accepted her offer.  *See id*. at 47.

The plaintiff was sent to Dr. Freedman, who prepared a report dated May 22, 2014, in which he diagnosed the plaintiff with marijuana dependence and alcohol dependence (in reported remission) and found that he possessed adequate persistence in order to work, except perhaps for medical issues beyond the scope of the report.  *See id*. at 358.  Dr. Freedman added that the plaintiff had a mildly impaired ability to manage work pressures but, historically, only in the context of ongoing substance abuse, had adequate social interaction ability, and had an ability to adapt to circumstances.  *See id*.  He found that the plaintiff's level of understanding, concentration, ability to follow instructions, memory, and language ability were suitable for employment.  *See id*.

At the outset of his report, Dr. Freedman noted that the referral questions included "mental status, ADLs [activities of daily living], financial and medical capability, substance abuse, anxiety, cognitive ability, and DSM-IV diagnosis."  *Id*. at 355.  He indicated that, in reaching his

conclusions, he relied on an interview, behavioral observations, administration of the Wechsler

Adult Intelligence Scale-IV test, and review of certain records.  *See id.*  In a section of his report

titled, "Vocational issues[,]" he stated:

> The [plaintiff] has held jobs in various fields.  He noted having been fired for getting angry when told what to do.  He also has missed work[] because of medical issues, such as headaches.

> The [plaintiff] has had some legal history that he noted may have impacted . . . his ability to get hired.  He noted that he was arrested and convicted of domestic assault, which he described as "bullshit and bogus".  He also had an altercation with his father at age 17 which led to an arrest.  He has had numerous marijuana possession charges.

*Id.* at 356.

Dr. Freedman also completed a medical assessment of ability to do work-related activities

(mental), dated May 29, 2014, in which he indicated that the plaintiff had no limitations, or only

slight limitations, in all listed categories.  *See id.* at 360-62.  With respect to making occupational

adjustments, he stated: "The claimant historically has been oppositional to authority, even to his

own detriment."  *Id.* at 360.  With respect to making personal/social adjustments, he wrote, "The

[plaintiff] has had mild to moderate impulse control [and] maintains this pattern by [illegible]

responsibility on others."  *Id.* at 361.

The record contains no evidence of transmission of the Freedman report or assessment to

the plaintiff.  However, the plaintiff states that he received a "May 27, 2014 proffer letter" from

the administrative law judge transmitting the consultative report and that the assessment was

informally provided separately to his counsel on June 4, 2014, without an additional proffer letter.

Statement of Errors at 3-4.  At oral argument, the plaintiff's counsel acknowledged that the proffer

letter indicated that the plaintiff had an opportunity to submit comments on the evidence, submit

interrogatories to be propounded to the author, or request a supplemental hearing.

By letter dated June 4, 2014, the plaintiff's counsel wrote to the administrative law judge, stating that pursuant to her letter of May 27, 2014, he had enclosed "written questions to be submitted to" Dr. Freedman.  Record at 248.  He attached a letter to Dr. Freedman in which he asked him:

> (1) Please describe your examination of Mr. Dunham, including the length of the examination, the nature of your interview questions, and the tests Mr. Dunham was asked to perform.
>
> (2) Regarding the "legal history" described on the second page of your Report, what are the approximate dates of the arrests and charges referenced therein?

*Id*. at 249.

The administrative law judge issued an adverse decision dated July 9, 2014, stating, in relevant part:

> At hearing, the [plaintiff] described traumatic memories, difficulty sleeping, and mood disturbances arising from a childhood accident.  The medical evidence of record refers to a remote history of counseling for depression and anxiety prior to the application date in this case.  However, there is no evidence of counseling or other treatment for mental health issues during the period at issue in this case.  Physical examination issues do not describe significant abnormalities of mood, affect, or cognitive functioning.
>
> In light of the [plaintiff's] hearing testimony and the absence of mental health treatment, the undersigned requested that the [plaintiff] attend a psychological consultative examination.  The examiner, [Dr. Freedman], observed that the [plaintiff's] mental status was essentially intact without significant abnormal findings.  The [plaintiff] demonstrated intellectual functioning in the low average to average range.  Dr. Freedman did not diagnose the [plaintiff] with a mental impairment other than marijuana dependence and alcohol dependence in reported remission.  Therefore, there is no medically determinable mental impairment other than the [plaintiff's] substance use.

*Id*. at 20 (citations omitted).

There is no indication in the decision, or elsewhere in the record, that the administrative law judge forwarded the plaintiff's counsel's questions to Dr. Freedman, that he answered them, or that she considered them.

## B.  Analysis

The plaintiff complains that the administrative law judge failed to consider or address his counsel's questions to Dr. Freedman, in violation of 20 C.F.R. § 416.1416(f)[2] and *Wallace v. Bowen*, 869 F.2d 187, 193 (3d Cir. 1988) (pertaining to Social Security claimants' right to procedural due process), and that the error was not harmless "because Dr. Freedman's findings were entirely detrimental to Plaintiff's case and failed to even address the issues that led to the suggestion of a post-hearing CE [consultative examination] during Plaintiff's hearing."  Statement of Errors at 4-5.

The commissioner rejoins that the plaintiff fails to demonstrate that there was a violation of any applicable regulation or of due process or that any such violation was prejudicial.  *See* Opposition at 4-12.  I agree.

### 1.  Regulatory Violation

The regulation cited by the plaintiff provides claimants an opportunity to review and comment on evidence obtained or developed after a disability hearing in circumstances in which "all evidence taken together can be used to support a reconsidered determination that is unfavorable to [the claimant] with regard to the medical factors of eligibility[.]"  20 C.F.R. § 416.1416(f).  Claimants are given 10 days from the date of receipt of notice of the existence of such evidence to submit comments for consideration "before a reconsidered determination is issued."  *Id.*  "[A] supplementary hearing may be scheduled at [a claimant's] request."  *Id.*

As the commissioner argues, *see* Opposition at 5, the regulation is inapposite in that it pertains to hearings conducted by disability hearing officers at the reconsideration stage of the

---

[2] The plaintiff cited 20 C.F.R. § 404.916(f).  *See* Statement of Errors at 5.  However, as the commissioner notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 5, that regulation pertains to Social Security Disability ("SSD") applications, and the decision concerned only the plaintiff's application for SSI benefits.  I have substituted a citation to the identically-worded SSI regulation.

administrative process, not hearings conducted at the next stage by administrative law judges, *compare* 20 C.F.R. § 416.1416(f) *with id*. §§ 416.1444-61; *see also Filipi v. Chater*, No. 94-3583, 1995 WL 276401, at *2 (8th Cir. May 11, 1995) ("[S]ection 404.916 does not apply to an initial hearing before an ALJ [administrative law judge] but rather applies at the reconsideration stage. The regulations governing an ALJ hearing do not set forth such a requirement [that an administrative law judge solicit a claimant's comments on post-hearing evidence].").

There is no parallel regulatory provision pertaining to hearings conducted by administrative law judges. However, the commissioner acknowledges that, pursuant to internal operating procedures set forth in the Social Security Administration, Office of Disability Adjudication and Review, Hearings, Appeals and Litigation Law Manual ("HALLEX"), the administrative law judge was required to proffer Dr. Freedman's opinion to the plaintiff and his attorney and offer the plaintiff the opportunity for a supplemental hearing. *See* Opposition at 7; HALLEX § I-2-7-1(B), (C). The commissioner, nonetheless, argues that the plaintiff waived any argument predicated on HALLEX by failing to cite to it and, in any event, cannot show that any HALLEX violation was prejudicial to his case. *See* Opposition at 7-8.

At oral argument, the plaintiff's counsel contended that there was no waiver because his client sufficiently raised the issue of whether the administrative law judge followed proper procedures in handling his request that interrogatories be submitted to Dr. Freedman. In these circumstances, in which the plaintiff did raise the point, albeit buttressed by citation to the wrong authority, and the commissioner herself disclosed the existence of the pertinent HALLEX provisions, I find no waiver. *See Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future*, issues or claims*

not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted) (emphasis added).

"It is an open question in this circuit whether an ALJ's failure to comply with HALLEX can *ever* constitute reversible error." *Webber v. Colvin*, 2:15-cv-00385-JDL, 2016 WL 4764903, at *2 (D. Me. Sept. 13, 2016) (citation and internal quotation marks omitted) (emphasis in original). "However, those courts that have concluded that an ALJ's failure to comply with HALLEX constitutes reversible error have required a claimant to demonstrate that he or she suffered some prejudice from the ALJ's misstep before remanding." *Id.* (citations and internal quotation marks omitted).

HALLEX directs that a proffer letter must provide:

- A time limit to object to, comment on, or refute the proffered evidence, and to submit a written statement as to the facts and law that the claimant believes apply to the case in light of the evidence submitted;

- A time limit to submit written questions to the author(s) of the proffered evidence;

- When applicable, an opportunity to request a supplemental hearing, including the opportunity to cross-examine the author(s) of any posthearing evidence; and

- The opportunity and instructions for requesting a subpoena for the attendance of witnesses or the submission of records.

HALLEX § I-2-7-30(A) (citation omitted).

If a claimant requests an opportunity to question an author of posthearing evidence (other than in circumstances not relevant here), "the ALJ will evaluate whether questioning the author is necessary to inquire fully into the matters at issue" and, if she determines it is necessary, "will determine whether to conduct the questioning through live testimony or written interrogatories."

*Id*. § I-2-7-30(C)(1).  The HALLEX does not require administrative law judges to notify claimants of that decision or otherwise address such requests in their written decisions.  *See id*.[3]

At oral argument, the plaintiff's counsel contended that, in responding to the proffer letter that he and his client admittedly received, he had a reasonable expectation that the interrogatories would in fact be submitted to Dr. Freedman, that the administrative law judge would transmit Dr. Freedman's responses to him, and that he would be afforded an opportunity to follow up; for example, by way of a request for a supplemental hearing and/or the provision of comments.[4] However, he did not place the administrative law judge on notice of those expectations.  He simply asked that she submit two questions to Dr. Freedman.  *See* Record at 248-49.  The administrative law judge's handling of that request comported with the requirements of the HALLEX.  She evidently determined that submitting the questions to Dr. Freedman was unnecessary.  She was not required to explain why.

In any event, as the commissioner argues, *see* Opposition at 8, were I to assume that the administrative law judge's handling of the request did not comport with the HALLEX, the plaintiff fails to demonstrate that he was prejudiced as a result, for the reasons that follow.

### 2.   Due Process Violation

The plaintiff also claims a procedural due process violation, relying on the holding of the United States Court of Appeals for the Third Circuit in *Wallace* that, "when an administrative law judge chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only an opportunity to comment and

---

[3] By contrast, the HALLEX does require administrative law judges to "address any comments [from claimants] on the proffered evidence in the rationale of the written decision."  HALLEX § I-2-7-30(C)(2).  The plaintiff did not comment on the Freedman report; he simply asked that two questions be submitted to Dr. Freedman.  *See* Record at 248-49.
[4] At oral argument, the plaintiff's counsel clarified that his client does not seek remand on the basis of the fact that the administrative law judge did not accompany her transmission of the later-penned Freedman RFC assessment with a separate proffer letter.

9

present evidence but also an opportunity to cross-examine the authors of any post-hearing reports

when such cross-examination is necessary to the full presentation of the case, and must reopen the

hearing for that purpose if requested." Statement of Errors at 5 (quoting *Wallace*, 869 F.2d at 193).

As the commissioner points out, *see* Opposition at 8, this court has cited *Wallace* for the

proposition that "the rendering of an adverse decision based in part on post-hearing vocational

evidence of which the plaintiff had no notice, and to which she had no opportunity to respond,

offends due process[,]" *Lewis v. Barnhart*, No. 06-35-B-W, 2006 WL 3519314, at *3 (D. Me. Dec.

6, 2006) (rec. dec., *aff'd* Dec. 28, 2006).

However, the administrative law judge met this standard: she placed the plaintiff on notice

of the Freedman report and assessment and offered him the opportunity to respond. To the extent

that the plaintiff complains that no supplemental hearing was held and/or that he was not afforded

the opportunity to comment on the evidence, he failed to place the administrative law judge on

notice that, in addition to requesting that interrogatories be submitted to Dr. Freedman, he reserved

the right to avail himself of those additional measures. *See Ogannesyan v. Colvin*, Case No. CV

15-0220-JPR, 2016 WL 2982182, at *5 (C.D. Cal. May 23, 2016) ("Plaintiff cannot now complain

that the investigators did not appear at the hearing when he never asked the ALJ to subpoena

them.").

To the extent that the plaintiff argues that he was entitled to answers to his interrogatories,

he cites no authority for the proposition that a claimant has an absolute right, as a matter of due

process, to obtain such answers from the author of a post-hearing report. *Wallace* concerned the

right to cross-examine the author of such a report, not to obtain answers to written interrogatories.

*See Wallace*, 869 F.2d at 192-93. In any event, even as to cross-examination, the *Wallace* court

held that this right should be afforded a Social Security claimant "when such cross-examination is

necessary to the full presentation of the case[.]" *Id*. at 193.  For the reasons discussed below, the plaintiff fails to show that answers to the interrogatories that he wished to pose to Dr. Freedman were necessary to a full presentation of his case.

### 3.   Prejudice

As the commissioner argues, *see* Opposition at 9-12, even assuming that the plaintiff had shown a violation of the HALLEX or of due process, he fails to make the showing of prejudice necessary to warrant reversal and remand, *see Newcomb v. Colvin*, No. 2:15-cv-463-DBH, 2016 WL 3962843, at \*3 (D. Me. July 22, 2016) (rec. dec., *aff'd* Aug. 10, 2016) (to warrant remand on basis of due process violation, a claimant must show resulting prejudice); *Dawes v. Astrue*, No. 1:11-cv-272-DBH, 2012 WL 1098449, at \*3-\*4 (D. Me. Mar. 20, 2012) (rec. dec., *aff'd* Apr. 17, 2012) (to warrant remand, claimant must show that he was prejudiced by a HALLEX violation).

The plaintiff argues that the administrative law judge's reliance on the Freedman reports without addressing his requested interrogatories was not harmless because the Freedman findings were detrimental to his case and failed to address the issues that led the administrative law judge to seek a post-hearing examination.  *See* Statement of Errors at 5.

Yet, the focus of the inquiry is not on whether the Freedman report hurt the plaintiff's case, but on whether obtaining answers to the interrogatories posed by the plaintiff would have made any difference to the outcome – specifically, the administrative law judge's finding that the plaintiff had no mental health impairments other than marijuana dependence and alcohol dependence (in reported remission).  *See* Finding 2, Record at 19.  *See also, e.g., Bowman v. Colvin*, No. 1:12-CV-246-GZS, 2013 WL 1907454, at \*5 (D. Me. Mar. 31, 2013) (rec. dec., *aff'd* May 8, 2013) (a claimant "must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result") (citation and internal quotation marks

11

omitted).  The Step 2 finding was critical in that, while the plaintiff had described psychological

symptoms that prompted the administrative law judge's request for the examination, no symptom

can "be found to affect an individual's ability to do basic work activities unless the individual first

establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a

medically determinable physical or mental impairment(s)[.]"   Social Security Ruling 96-3p,

reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016), at 117.

The plaintiff does not explain, and it is not otherwise apparent, how answers to either of

his interrogatories could have made an outcome-determinative difference.  As the commissioner

observes, *see* Opposition at 11, the information sought by the first interrogatory (a description of

the examination of the plaintiff, including the length of the examination, nature of the interview

questions, and the tests the plaintiff was asked to perform) is largely provided in the Freedman

report, *see* Record at 355-58.  While Dr. Freedman did not list the specific questions asked, their

nature is apparent from the face of the report (*e.g.*, chief complaint, childhood history, educational

history, family history, vocational issues). *See id.* at 356.  Regardless, it is unclear how information

about the manner in which Dr. Freedman conducted his examination could have had any bearing

on his assessment, or the administrative law judge's finding, that the plaintiff had no additional

mental health diagnoses.

In a similar vein, there is no reason to believe that Dr. Freedman's answer to the plaintiff's

second proposed interrogatory, regarding the approximate dates of the arrests and charges

referenced in the report's "legal history" discussion, would have had any bearing on Dr.

Freedman's diagnoses or the administrative law judge's finding predicated on them.  As counsel

for the commissioner noted at oral argument, nothing in the Freedman report indicates that Dr.

Freedman, who relied on behavior observations, intelligence testing, and record review, as well as

his interview of the plaintiff, placed undue emphasis on the plaintiff's criminal history.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of December, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

13